**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PARAMJEET T.,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security Administration,

Defendant.

Case No. 5:25-cv-02083-PD

**MEMORANDUM OPINION AND ORDER AFFIRMING AGENCY DECISION**

Plaintiff challenges the denial of her application for Supplemental Security Income.[1] For the reasons stated below, the decision of the Administrative Law Judge is affirmed.

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the United States Judicial Conference Committee on Court Administration and Case Management. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisgnano, the current Commissioner of Social Security, is hereby substituted in as the Defendant.

## I. Pertinent Procedural History and Disputed Issues

On September 28, 2022, Plaintiff protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), alleging disability beginning May 11, 2022. Administrative Record ("AR") 17, 281-86.[2] Plaintiff's application was denied administratively in August 2022, and upon reconsideration in December 2023. AR 17, 168-69. Plaintiff requested a hearing, which was held via telephone on July 1, 2024, before an Administrative Law Judge ("ALJ"). AR 93-123. Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert. *Id.* On August 23, 2024, the ALJ issued a decision finding that Plaintiff has not been under a disability as defined by the SSA, since September 28, 2022, the date the application was filed. AR 30. The Appeals Council denied Plaintiff's request for review on July 9, 2025, rendering the ALJ's decision the final decision of the Commissioner. AR 1-6.

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 28, 2022. AR 19 ¶ 1.

At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbosacral radiculopathy; degenerative joint disease of the hips, knees, right foot, and right ankle; venous insufficiency; bilateral carpal tunnel syndrome; bipolar disorder; post-traumatic stress disorder (PTSD); and substance abuse disorder (20 CFR 416.920(c))." AR 19 ¶ 2. The ALJ found

---

[2] The Administrative Record is CM/ECF Docket Numbers 11-1 through 11-11. Plaintiff's Opening Brief is at Docket Number 15 and the Commissioner's Brief is at Docket Number 17. Plaintiff did not file an optional Reply Brief.

that these impairments significantly limit Plaintiff's ability to perform basic work activities. AR 19.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 20 ¶ 3.

Before proceeding to step four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") for light work, as defined in the regulations, with the following limitations:

> except lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; frequently push and/or pull with the bilateral upper extremities; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach overhead, to the front, and laterally with the bilateral upper extremities; frequently handle, finger, and feel with the bilateral upper extremities; and avoid concentrated exposure to vibration and hazards such as heavy machinery and heights. The claimant is unable to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas; occasionally can deal with changes in a routine work setting; occasionally can interact with supervisors and coworkers but no tandem or teamwork; can have no interaction with the public.

AR 22, 23 ¶ 4.

At step four, the ALJ found that Plaintiff has no past relevant work. AR 28 ¶ 5. At step five, the ALJ made findings of Plaintiff's vocational profile. The ALJ noted that Plaintiff was born on September 11, 1979, and was 43 years old, which is defined as a younger individual, and has at least a high school education. AR 28-29 ¶¶ 6-7. The ALJ found that transferability of job skills is not an issue because Plaintiff does not have past relevant work. AR 29 ¶ 8. Considering Plaintiff's age, education, work experience, and RFC, the

ALJ found that there are jobs which exist in significant numbers in the national economy that Plaintiff can perform, in the occupations of retail marker, collator operator, and cafeteria attendant. AR 29 ¶ 9. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the SSA, since September 28, 2022, the date the application was filed. AR 30 ¶ 10.

Plaintiff raises five issues:

(1) At step three, the ALJ erred in finding that Plaintiff's medical conditions do not meet the listing criteria;

(2) Whether the ALJ properly evaluated Plaintiff's impairments and accounted for all her limitations in assessing the RFC;

(3) Whether the ALJ properly considered the medical opinions and prior administrative medical findings consistent with the regulations;

(4) whether the ALJ improperly discounted Plaintiff's subjective symptom testimony; and

(5) Whether the ALJ's step five determination was supported by substantial evidence. Dkt. No. 15.[3]

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S.97, 103 (2019) (same).

[3] The Court addresses issues 2 and 3 together.

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[4]

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## III. Discussion

### A. The ALJ Did Not Err at Step Three

Plaintiff contends that the ALJ erred by failing to find that her impairments meet or equal the criteria for Listings 1.15, 1.16, 1.18, 4.11, 11.14, 12.04, and 12.15. Dkt. No. 15 at 3-31.

#### 1. Applicable Law

At step three, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the Listing of Impairments ("Listings"), as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(d). A claimant who has an impairment or combination of impairments that meets the 12-month duration requirement and meets or medically equals one of the

[4] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

Listings is presumed to be disabled without further inquiry. 20 C.F.R. §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); *See Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) ("Listed impairments are purposefully set at a high level of severity because the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.") (citation and internal quotations omitted). The claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, and the ALJ's decision must adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

"'For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Ford*, 950 F.3d at 1148 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). Similarly, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 521 (emphasis in original). The mere diagnosis of a listed impairment is insufficient to establish a finding of disability at step three. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990).

**2. Analysis**

Here, the ALJ found at step two that Plaintiff had severe impairments, including lumbosacral radiculopathy; degenerative joint disease of the hips, knees, right foot, and right ankle; venous insufficiency; bilateral carpal tunnel syndrome; bipolar disorder; PTSD; and substance use disorder. AR 19. The

ALJ then considered at step three whether Plaintiff's impairments satisfied the requirements of the Listings. AR 20-22.

Regarding the requirements of Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), the ALJ pointed out that the medical evidence does not indicate disorders of the skeletal spine resulting in compromise of a nerve root documented by radicular symptoms of pain, paresthesia, or muscle fatigue along with signs of muscle weakness, nerve root irritation, tension, or compression in addition to either the requisite sensory changes or decreased deep tendon reflexes while also being established by imaging results and with impairment-related physical limitations having lasted or being expected to last for at least 12 continuous months. AR 20.

Regarding the requirements of Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), the ALJ pointed out that there was no indication of spinal stenosis causing neurological compromise with symptoms of pain, sensory loss, or claudication along with signs of muscle weakness and sensory changes or decreased deep tendon reflexes in one or both lower extremities while also being established by imaging showing compromise of the cauda equina with lumbar spinal stenosis and with impairment-related physical limitations having lasted or being expected to last for a least 12 continuous months. AR 20.

Further, regarding the impairment-related physical limitations criteria for both Listings 1.15 and 1.16, the ALJ explained that there was no evidence that Plaintiff medically requires an assistive device that involves the use of both hands or has an inability to use one upper extremity and requires an assistive device using the other upper extremity. AR 20. The ALJ also emphasized that Plaintiff had not satisfied the Listing 1.15 physical

limitation of an inability to use both upper extremities for fine and gross movements. AR 20.

Regarding Listing 1.18 (abnormality of a major joint(s) in any extremity), the ALJ pointed out that the medical evidence does not indicate abnormality of a major joint(s) in any extremity with the inability to use at least one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements. AR 20. The ALJ explained that Plaintiff's impairments do not preclude the use of both upper extremities to complete work-related activities due to impairments of both upper extremities; the need to use both upper extremities with an assistive device for mobility; or a combination of upper and lower extremity impairments and the need to use an assistive device for mobility. AR 20. The ALJ noted that physical exams showed some tenderness to palpation and decreased range of motion in the lumbar spine, one instance of positive straight leg raises bilaterally, tenderness over the bilateral hips, knees, right ankle and foot, decreased range of motion and motor strength in the right ankle, tenderness over the bilateral hands, and some decreased sensation in the bilateral upper extremities. AR 20-21. However, the ALJ emphasized that Plaintiff had mostly normal gait, and did not use an assistive device. AR 21 (citing AR 532, 552, 588, 608, 613, 651-59, 731, 877, 913, 928, 985, 1934).

Regarding the requirements of Listing 4.11 (chronic venous insufficiencies of a lower extremity), the ALJ pointed out that the medical evidence does not indicate incompetency or obstruction of the deep venous system and extensive brawny edema or superficial varicosities, stasis dermatitis, and recurrent or persistent ulceration that has not healed following at least three months of prescribed treatment. AR 21.

Regarding the requirements for Listing 11.14 (peripheral neuropathy), the ALJ pointed out that the medical evidence does not indicate peripheral

neuropathy with disorganization of motor function in two extremities, resulting in extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, or marked limitation in physical functioning. AR 21.

The ALJ also considered the severity of Plaintiff's mental impairments, both singly and in combination, and found that they do not meet or medically equal the criteria of Listings 12.04 (depressive, bipolar and related disorders) and 12.15 (trauma-related and stressor-related disorders such as PTSD). AR 21. In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied. AR 21. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. AR 21.

The ALJ explained that Plaintiff has mild limitations in understanding, remembering, or applying information. The ALJ noted that Plaintiff reported she has difficulty with her memory; however, Plaintiff further reported that she can manage money and pay bills. AR 21 (citing AR 661-64). The ALJ pointed out that the consultative examiner found that Plaintiff had intact memory, intact abstract thinking, and appropriate insight and judgment. AR 21 (citing AR 661-64).

The ALJ also found that Plaintiff has moderate limitations in interacting with others. AR 21. Plaintiff indicated she has anger issues, impatience with others when irritable, some violent and destructive behavior, and social withdrawal. AR 21 (citing AR 100-11, 397-646, 661-64). The ALJ highlighted the consultative examiner findings that Plaintiff had dysthymic and anxious mood, but she was alert, fully oriented, adequately groomed, cooperative, and friendly with good eye contact, normal psychomotor behavior, normal speech, linear and goal directed thought processes, unremarkable

thought content, and appropriate insight and judgment. AR 21 (citing AR 661-64).

The ALJ explained that Plaintiff has moderate limitations regarding concentrating, persisting, or maintaining pace. AR 22. The ALJ noted that Plaintiff reported she has occasional difficulty with her concentration, and in her ability to pay attention, and handle stress and changes in routine; however, she further reported she can complete household chores, manage money, and pay her bills. AR 22 (citing AR 100-11, 397-646, 661-64). The ALJ also explained that Plaintiff has moderate limitations in adapting or managing herself. AR 22. Plaintiff reported she is independent with personal care, and she can complete household chores, run errands, shop in stores, manage money, and pay bills. AR 22 (citing AR 661-64).

The ALJ explained that because Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied. AR 22. The ALJ also considered whether the "paragraph C" criteria are satisfied and found that the evidence fails to establish the presence of the "paragraph C" criteria. AR 22.

Plaintiff has the burden of producing medical evidence that her impairment meets or equals a particular listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Plaintiff did not meet her burden. Contrary to Plaintiff's assertions, the relevant medical records do not support a finding that Plaintiff met a Listing. The ALJ properly concluded that the medical records did not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment. AR 20-22. Accordingly, the ALJ did not err at step three.

### B. The ALJ Properly Rendered Plaintiff's RFC and Considered the Medical Opinions and Prior Administrative Medical Findings

Plaintiff argues that the ALJ failed to properly evaluate her physical impairments and assess an RFC determination that accounted for her functional limitations. Dkt. No. 15 at 31-41. Plaintiff then lists certain medical records from the consultative and state agency examiners. *Id*. at 41-51.

#### 1. Relevant Law

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite their limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. The ALJ is responsible for translating and incorporating supported medical evidence into a succinct RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford*, 950 F.3d at 1149. Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan*, 528 F.3d at 1198.

The Social Security Administration regulations for claims filed on or after March 27, 2017 apply here. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 2017 WL 168819, at 5844-45 (Jan. 18, 2017). Under these regulations, special deference is no longer given to the opinions of treating and examining physicians on account of their relationship with a claimant, and an ALJ's "decision to discredit any medical

opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources.").

The regulations require ALJs to consider and evaluate the persuasiveness of all medical opinions and prior administrative medical findings from medical sources. *See* 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). In determining how "persuasive" these opinions and findings are, an ALJ must consider the following factors: supportability, consistency, relationship with claimant, specialization, and other factors that support or contradict the medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)); 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); 20 C.F.R. § 416.920c(c)(2). While the ALJ's decision must articulate how the ALJ considered supportability and consistency, the decision need not explain the remaining factors unless the ALJ is deciding among differing yet equally persuasive opinions or findings on the same issue. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *Woods*, 32 F.4th at 792.

An ALJ must provide an explanation supported by substantial evidence, which articulates how they considered both supportability and consistency. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023); *see also Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (ALJ must address how they considered the consistency and supportability factors in sufficient detail to allow a reviewing court to conduct a meaningful review of whether that reasoning is supported by substantial evidence).

An RFC is defective if it fails to take a plaintiff's limitations into account. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). However, "[t]here is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC." *McIntosh v. Colvin*, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018); *see also Foster v. Kijakazi*, 2022 WL 3230472, at *2 (9th Cir. Aug. 10, 2022) ("An ALJ considers opinions from medical sources on the issue of a claimant's RFC, but the final responsibility for deciding this issue is reserved to the Commissioner.") (citations, internal quotation marks, and alterations omitted). Finally, it is well established that RFC determinations are legal decisions, not medical opinions. *Valerie C. v. Berryhill*, 2019 WL 450675, at *6 (C.D. Cal. Feb. 5, 2019).

**2. Relevant Medical Opinion Evidence**

In determining Plaintiff's RFC, the ALJ noted that she was persuaded by the opinions of Dr. Chuang, the orthopedic consultative expert, who examined Plaintiff in February 2023 and found decreased range of motion in the lumbar spine, positive straight leg raises bilaterally, tenderness and crackles over the bilateral hips and knees, tenderness over the right ankle and foot, inversion spasticity and decreased range of motion and motor strength in the right ankle, tenderness in the hands, decreased sensation in the bilateral upper extremities, and mildly limping gait. AR 24, 26. Dr.

Chuang also noted Plaintiff had difficulty with toe walking, heel walking, squatting, and rising. AR 26 (citing AR 651-56). Dr. Chuang opined that Plaintiff is able to lift and carry 20 pounds occasionally and 10 pounds frequently; frequently push, pull, and reach overhead; stand and walk six hours out of an eight-hour workday; sit six hours out of an eight-hour workday; occasionally bend, crouch, stoop, and crawl; occasionally walk on uneven terrain, climb ladders, and work at heights; and frequently finger, handle, and perform fine and gross manipulations. AR 26 (citing AR 655-56).

In February 2023, Plaintiff underwent a consultative psychological examination with Elizabeth Walsh, PsyD. AR 27 (citing AR 661-64). Dr. Walsh opined that Plaintiff would have no limitations performing simple and repetitive tasks and mild limitations performing detailed and complex tasks. AR 27. Dr. Walsh opined that Plaintiff would have mild difficulties in the ability to perform work activities on a consistent basis without special or additional supervision; have mild limitations completing a normal workday or workweek due to mental condition; would have mild limitations accepting instructions from supervisors and interacting with coworkers and with the public; and have mild difficulties in the ability to handle the usual stresses, changes, and demands of gainful employment. AR 27 (citing AR 664).

The ALJ considered the December 2023 prior administrative medical findings of State agency medical consultant William Land, M.D. AR 27 (citing AR 170-78). Dr. Land opined that Plaintiff is limited to a range of light work with frequent pushing/pulling with the bilateral upper extremities; occasional postural limitations; frequent reaching in all directions; frequent handling, fingering, and feeling with the bilateral upper extremities; and avoiding concentrated exposure to hazards such as heavy machinery and heights. AR 27 (citing AR 170-78).

The ALJ also considered the March 2023 prior administrative medical findings of State agency medical consultant M. Amado, M.D. AR 27 (citing AR 159-66). Dr. M. Amado found Plaintiff is limited to occasional postural manipulations, frequent overhead reaching, handling, fingering, and feeling with the bilateral upper extremities. AR 27 (citing AR 159-64).

The ALJ considered the March 2023 prior administrative medical findings of State agency psychological consultant Uwe Jacobs, PhD. AR 28 (citing AR 155-59). Dr. Jacob opined that Plaintiff's mental impairments are non-severe. AR 28 (citing AR 155-59).

The ALJ considered the December 2023 prior administrative medical findings of State agency psychological consultant Sonya Adamo, PsyD. AR 28 (citing AR 170-79). Dr. Adamo opined that Plaintiff can adapt to low stress, non-pressured work. AR 28 (citing AR 170-79).

**3. Analysis**

The ALJ assessed Plaintiff with an RFC to perform light work that is supported by the objective medical evidence contained in the record and Plaintiff's activities of daily living. AR 28. The ALJ highlighted the following imaging studies: July 2022 x-rays of the right hip that revealed calcification but were otherwise unremarkable, AR 24 (citing AR 1863); July 2022 x-rays of the bilateral wrists that were unremarkable, AR 24 (citing AR 1864); November 2022 x-rays of the right knee that were unremarkable, AR 24 (citing AR 1862); January 2023 magnetic resonance imaging ("MRI") scan of the right knee that showed joint degeneration and chondromalacia, AR 24 (citing AR 1860); January 2024 x-rays of the bilateral hips that were unremarkable, AR 24 (citing AR 1859); June 2024 MRI of the right hip that revealed mild tendinosis with trace trochanteric bursitis, AR 24 (citing AR 1993); and a June 2024 MRI of the lumbar spine that revealed mild spondylosis and mild central canal and lateral recess stenosis at L4-L5 with

subtle mass effect on both L5 nerve roots, AR 24 (citing AR 1991). The ALJ found that the objective medical evidence fails to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. AR 24-28.

The ALJ considered the medical opinions of Drs. Chuang, Walsh, Land, M. Amado, Jacobs, and S. Amado and properly articulated the factors of supportability and consistency in evaluating their opinions. AR 26-28. The ALJ explained that Dr. Chuang's opinions were partially persuasive; his examination report provided support for his opinion and is partially consistent with the record. AR 26 (citing AR 651-59). The ALJ explained that while Plaintiff had some exams that showed some tenderness and painful range of motion over the lumbar spine, bilateral hips, right knee, and bilateral wrists, they generally showed Plaintiff had mostly normal range of motion throughout and normal gait. AR 26 (citing AR 532, 552, 588, 608, 613, 651-59, 731, 877, 913, 928, 985, 1934). The ALJ emphasized that these findings support that Plaintiff can perform a range of light work and can frequently push and/or pull with the bilateral upper extremities; occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach overhead, to the front, and laterally with the bilateral upper extremities; frequently handle, finger, and feel with the bilateral upper extremities; and avoid concentrated exposure to vibration and hazards such as heavy machinery and heights. AR 26.

The ALJ next discussed Dr. Walsh's opinion and found that it was not persuasive. AR 27. The ALJ explained that Dr. Walsh's examination report does not support her opinion that Plaintiff has only mild limitations and is not consistent with the record. AR 27 (citing AR 661-64). The ALJ pointed out that Plaintiff reported anger issues with violent and destructive behavior including tearing down and destroying her friend's tent when she lost her

temper. AR 27 (citing AR 515). The ALJ further highlighted other mental status exams of Plaintiff that frequently showed dysthymic and anxious mood with flat or labile affect, limited insight, and unkempt appearance. AR 27 (citing AR 515, 536, 592, 617, 697, 735, 966, 990, 1941). The ALJ emphasized that at one mental status exam, Plaintiff was noted to have homicidal ideation when irritated. AR 27 (citing AR 535-36). The ALJ explained that these findings reflect Plaintiff is unable to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas; occasionally can deal with changes in a routine work setting; occasionally can interact with supervisors and coworkers but no tandem or teamwork; and can have no interaction with the public. AR 27.

The ALJ discussed Dr. Land's opinion and found it persuasive. AR 27-28. The ALJ explained that Dr. Land's findings are based on more recent evidence, including Plaintiff's testimony that she cannot tolerate vibration and her reports of numbness in the bilateral legs due to circulation issues and are more consistent with the record. AR 27. The ALJ also explained that he found Dr. Land's findings more persuasive than Dr. M. Amado's findings. AR 27.

The ALJ discussed Dr. Sonya Adamo's opinion that Plaintiff could adapt to low stress, non-pressured work and found it more persuasive than Dr. Jacob's opinion. AR 28 (citing AR 170-79). The ALJ explained that she found Dr. Sonya Adamo's findings more consistent with the record, which reflects severe mental impairments with some impaired concentration. AR 28. The ALJ found that social limitations are warranted based on Plaintiff's testimony regarding her difficulty dealing with social situations and mental status exams findings showing dysthymic and anxious mood with flat or labile affect, limited insight, and unkempt appearance. AR 28 (citing AR 100-11, 515, 536, 592, 617, 697, 735, 966, 990, 1941).

The ALJ considered all the medical evidence and opinions and found that the opinions of Drs. Chuang, Land and Sonya Amado were better supported and more consistent with the medical evidence. AR 26-28. The ALJ's findings were based on a reasonable analysis of the longitudinal record and supported by substantial evidence. AR 26-28.

To the extent Plaintiff suggests that the ALJ "did not give sufficient weight" to her treating doctors opinion, *see* Dkt. No. 15 at 59-60, she is mistaken. Under recent changes to SSA regulations, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies." *Woods*, 32 F.4th at 787. Further, to the extent Plaintiff suggests that the ALJ should have further developed the record, there is no evidence that the record was ambiguous or inadequate for proper evaluation of Plaintiff's claims.

Based on the overall record — including the medical evidence, Plaintiff's treatment history, her reports and testimony, and the opinion evidence, which the ALJ found persuasive for the reasons and to the extent cited — the ALJ found that Plaintiff retains the RFC to perform a range of light work with certain limitations. AR 19-30. While Plaintiff may have a different interpretation of the medical evidence and medical opinions, she does not show that the ALJ's interpretation was error. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). A decision to deny benefits will be overturned only if it is it not supported by "substantial evidence or it is based on legal error." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). Accordingly, the RFC set by the ALJ is supported by substantial evidence and the Court finds no reversible error in the assessment of Plaintiff's RFC. *Coleman*, 979 F.3d at 755; *Biestek*, 139 S. Ct. at 1154.

### C. The ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ improperly rejected her subjective symptom testimony. Dkt. No. 15. The Commissioner disagrees and argues that the ALJ's reasons for discounting Plaintiff's testimony regarding her limitations were supported by substantial evidence. Dkt. No. 20. For the following reasons, the Court agrees with the Commissioner.

#### 1. Legal Standard

In the absence of proof of malingering, an ALJ may reject a litigant's believability by identifying "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *see also Smartt v. Kijakazi,* 53 F. 4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024). (emphasis in original).

An ALJ may consider a claimant's conservative treatment when evaluating credibility, particularly when the claimant "responded favorably" to minimal treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) (same). Proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d

742, 751 (9th Cir. 2007); *Mojarro v. Berryhill*, 746 F. App'x 672 (9th Cir. 2018) (same). An ALJ may also rely on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and the claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) (same).

An ALJ may consider a variety of factors in analyzing the believability of a claimant's symptom testimony, including "ordinary techniques of credibility evaluation." *Burch*, 400 F.3d at 680; *Evans v. Berryhill*, 759 F. App'x 606, 608 (9th Cir. 2019) (same).

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations. However, this factor "cannot form the sole basis" for discounting subjective symptom testimony. *Burch*, 400 F.3d at 681; *Davis v. Berryhill*, 736 F. App'x 662, 665 (9th Cir. 2018).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Even if an ALJ impermissibly relies "on one of several reasons in support of an adverse credibility determination," the error is harmless if "the ALJ's remaining reasoning and *ultimate credibility determination* were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citation omitted).

**2. Plaintiff's Subjective Symptom Testimony**

**a) Plaintiff's testimony**

At the hearing, Plaintiff testified she experiences physical pain, but her mental health symptoms affect her more and are more debilitating. AR 109. Plaintiff testified that her physical problems have gotten a lot worse. AR 109. She is always uncomfortable with constant pain in her right knee, right hip, and lower back. AR 109. She must go back and forth from bending to straightening her right leg. AR 109-10. She must change positions constantly. AR 110. Plaintiff testified she has stabbing and throbbing pain and stiffness in both hands, but it is worse in her dominant right hand. AR 111-13. She cannot grasp or hold objects for long and has difficulty opening jars, untying things, and holding a pen. AR 112-13. Plaintiff testified she has varicose veins but is not a candidate for surgery because her veins are too small. AR 114.

Plaintiff testified she has anger issues, violent outbursts, thoughts of self-injurious behavior, mood swings, problems focusing, concentrating, and dealing with people, insomnia, nightmares, and auditory hallucinations. AR 105-08. She has been hearing voices for the past four or five years. AR 105. She has PTSD because she lost custody of her daughter about 10 years ago and required psychiatric hospitalization. AR 106. She has been admitted for psychiatric hospitalization about 15 times in her life, the last time was in 2017 when she lost custody of her daughter. AR 107. Plaintiff testified that she attended weekly therapy for a while but stopped because she had too many other appointments with physical therapy, chiropractor, mental health, and medical doctors. AR 108.

Plaintiff testified she stopped using methamphetamines three months before the hearing. AR 101-02. She had been using methamphetamine for about two years and has felt more depressed since she quit. AR 102. She

testified she can walk about half a mile, stand 20 minutes, and sit 20 minutes at a time. AR 113. She cannot handle vibration due to hand pain, right leg, and low back pain, so she had to stop riding her bicycle for exercise. AR 113, 116. Plaintiff testified that she needs to lie down most of the day. AR 111. She has difficulty climbing stairs and cannot squat. AR 113-14. She can lift two to three pounds. AR 111. Plaintiff testified that she could shop in stores. AR 111.

**3. Analysis**

Plaintiff contends that the ALJ failed to consider her subjective symptom testimony with respect to her physical and mental limitations. Dkt. No. 15 at 51-54. "A claimant's subjective symptoms, if credited, are relevant to the determination of a claimant's [RFC].... The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work." *Ferguson*, 95 F.4th at 1198 (internal citations omitted). "To determine whether a claimant's subjective symptom testimony is credible, the ALJ must engage in a two-step analysis: 'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* at 1199 (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). If step one is satisfied, the ALJ can only reject the plaintiff's testimony for "clear and convincing reasons," which ultimately requires the ALJ to "show [their] work." *Id.* (citations and internal quotation marks omitted).

At step two of the subjective symptom testimony analysis, an ALJ must identify which testimony is not credible and specifically link that testimony to evidence in the record that undercuts the credibility of the testimony. *See Brown-Hunter*, 806 F.3d at 494; *accord Ferguson*, 95 F.4th at 1200-01. The ALJ may not simply make the conclusory statement that Plaintiff's testimony

is not credible because it is inconsistent with the record and then proceed with an RFC analysis. *Brown-Hunter*, 806 F.3d at 493-94. This is because the obligation to provide clear and convincing "reasons" for discounting a plaintiff's testimony is separate and distinct from any obligation to summarize medical record evidence that supports an RFC determination. *Id.*

Here, the ALJ found that Plaintiff had severe impairments including lumbosacral radiculopathy, degenerative joint disease of the hips, knees, right foot, and right ankle, venous insufficiency, bilateral carpal tunnel syndrome, bipolar disorder, "PTSD", and substance abuse disorder. AR 19 ¶ 2. The ALJ further found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but also found that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and the other evidence in the record. AR 25.

In this case, the ALJ did not find that Plaintiff had engaged in any degree of malingering and therefore was obliged to provide at least one "specific, clear, and convincing" reason supported by substantial evidence for discounting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms. *Trevizo,* 871 F.3d at 678. The Court finds that the reasons the ALJ provided for discounting Plaintiff's testimony—objective medical evidence and daily activities—meet this burden. AR 26-28. The Court considers each in turn.

**a) Objective Medical Evidence**

Plaintiff testified that she is unable to engage in work activities due to lumbosacral radiculopathy; degenerative joint disease of the hips, knees, right foot, and right ankle; venous insufficiency; bilateral carpal tunnel syndrome;

bipolar disorder; PTSD; and substance abuse disorder. AR 19, 93-116, 168-69, 303-308.

First, the ALJ engaged in a lengthy discussion of the objective medical evidence, ultimately concluding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are inconsistent with the medical evidence." AR 24-28. The ALJ pointed out that the medical evidence of record does not entirely support Plaintiff's allegations regarding her physical and mental impairments. AR 26. The ALJ explained that Plaintiff's subjective reported history cannot substitute for the objective medical evidence contained in the record, which provides a more accurate longitudinal history of Plaintiff's conditions. AR 26. The ALJ highlighted physical exams that showed some tenderness to palpation and decreased range of motion in the lumbar spine, one instance of positive straight leg raises bilaterally, tenderness over the bilateral hips, knees, right ankle and foot, decreased range of motion and motor strength in the right ankle, tenderness over the bilateral hands, and some decreased sensation in the bilateral upper extremities. AR 26. The ALJ further pointed out that mental status exams showed some depressed and anxious mood with flat or labile affect, some reported auditory hallucinations, some depressive thought content, some partial insight, some impaired concentration, and some unkempt appearance but were otherwise within normal limits. AR 26. The ALJ explained that while treatment notes indicate that Plaintiff has received treatment for her alleged health issues, the medical findings fail to support Plaintiff's allegation that she is unable to work. AR 26. The ALJ emphasized that the overall evidence indicates that while Plaintiff's condition restricts her ability to perform work-related activity, her condition does not preclude all work activity. AR 26.

"When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (emphasis in original). However, inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see* Soc. Sec. Ruling ("SSR") 16-3p, at *5, 2017 WL 5180304 (March 2017) ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). Therefore, the Court considers the other asserted factor.

**b) Daily Activities**

Inconsistent daily activities "may provide a justification for rejecting symptom testimony," although "the mere fact that a plaintiff has carried on certain daily activities [. . .] does not in any way detract from her credibility as to her overall disability." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (citation and quotations omitted). The Ninth Circuit recognizes two grounds upon which inconsistencies between symptom allegations and daily activities may establish clear and convincing reason to discount a claimant's credibility: (1) when those activities contradict the claimant's testimony, and (2) when those activities meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639; *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (Even when a claimant's activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *See Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (same).

The ALJ found that Plaintiff's daily activities are inconsistent with her statements about the intensity and persistence of symptoms (20 CFR

416.929). AR 26. For example, the ALJ explained that Plaintiff reported she is independent with personal care, and she can complete household chores, run errands, shop in stores, manage money, and pay bills. AR 26. It is clear from the opinion that the ALJ thoroughly considered Plaintiff's testimony, found Plaintiff's daily activities as *one* reason the record does not support the severity of Plaintiff's alleged symptoms, and concluded Plaintiff was not as limited as alleged. AR 26. As such, the ALJ's assessment of Plaintiff's daily activities was another appropriate basis to discount her subjective asserted limitations. *Id*.

In sum, the ALJ provided specific and legitimate reasons for discounting Plaintiff's symptom testimony. *Trevizo*, 871 F. 3d at 675. Under the relevant standard of review, "[i]f the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, th[is] court may not substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). As such, the Court finds substantial evidence supporting the ALJ's evaluation of Plaintiff's subjective symptom testimony. *Molina*, 674 F.3d at 1110.

**D. The ALJ's Step Five Finding is Supported by Substantial Evidence**

Plaintiff argues that she cannot make a successful adjustment to other work that exists in the economy based on her perception of the combined effects of her physical and mental limitations. Dkt. No. 15 at 56-60. The Commissioner disagrees and argues that Plaintiff's alternate interpretation of the record cannot supplant the ALJ's reasonable interpretation. Dkt. No. 17 at 11. For the following reasons, the Court agrees with the Commissioner.

**1. Relevant Law**

At step five of the sequential evaluation, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the

national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (alterations in original) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)) (citing 20 C.F.R. § 416.920(g)). After assessing the RFC, the ALJ considers potential occupations that the claimant may be able to perform. *See* 20 C.F.R. § 416.966. In making a disability determination at step five, the ALJ relies primarily on the Dictionary of Occupational Title ("DOT") for "information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). The DOT is "a resource compiled by the Department of Labor that details the specific requirements for different occupations . . ." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). The "DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces." Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). The term "occupation," as used in the DOT, refers to the collective description of those jobs, and each occupation represents numerous jobs. *Id.; see also Gutierrez*, 844 F.3d at 807. As such, the DOT "lists the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p, 2000 WL 1898704, at *3.

Moreover, the VE's "testimony is one type of job information that is regarded as 'inherently reliable.'" *Ford*, 950 F.3d at 1160 (citing *Buck v. Berryhill,* 869 F.3d 1040, 1051 (9th Cir. 2017)). Consequently, "an ALJ is entitled to rely on a VE's testimony to support a finding that the claimant can perform occupations that exist in significant numbers in the national economy." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022).

**2. Analysis**

At step five, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC, and the VE testified that given all of these factors, the individual would be able to perform the requirements of a retail marketer, collator operator and cafeteria attendant. AR 29. Pursuant to SSR 00-4p, the ALJ determined that the VE's testimony is consistent with the information contained in the DOT and its companion publication. AR 29. The VE explained that those portions of his testimony that are not addressed in the DOT and its companion publication, for example, time off task, interaction with different people, use of one upper extremity versus the other, overhead reaching versus other reaching, directional reaching, and production pace, are based on the VE's education and professional experience. AR 29-30. The ALJ found the VE's explanation reasonable and well-supported, and based on the VE's testimony, concluded that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. AR 30.

Substantial evidence is a relatively low threshold, and the ALJ's reasoning need only be a rational, rather than exclusive, interpretation of the evidence. *See Biestek*, 587 U.S. at 103 ("whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" when courts "review agency fact finding"). Here, the ALJ's detailed findings readily pass this standard, notwithstanding Plaintiff's perspective on the record. Reviewing courts do not substitute their judgment for that of the ALJ by reweighing the evidence. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "We may not reweigh the evidence or substitute our judgment for that of the ALJ. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. When the

evidence can rationally be interpreted in more than one way, [we] must uphold the ALJ's decision." *Id.* at 1115–16 (cleaned up). Accordingly, Plaintiff has failed to show the ALJ erred at step five.

## IV. Order

Accordingly, for all the reasons stated above, the Court finds that the ALJ's decision does not show legal error and is supported by substantial evidence. It therefore is affirmed. A separate judgment will issue.

IT IS SO ORDERED.

Dated: September 29, 2026

Patricia Donahue

HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE